# The Pocket Veto: Historical Practice and Judicial Precedent

## II.

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This memorandum supplements our memorandum of February 10, 1982, to you, which discussed generally the President's power to pocket veto legislation. That memorandum also addressed the propriety of President Reagan's pocket veto of H.R. 4353 during the intersession recess of the 97th Congress.[1] Since that memorandum was prepared several matters have come to our attention. While none of them casts doubt on the conclusions articulated in our earlier memorandum, we believe that they should be brought to the attention of those who might rely on our February 10, 1982, memorandum in making decisions about the advisability of future pocket vetoes.[2]

In our February 10 memorandum we discussed the 1974 D.C. Circuit decision in *Kennedy* v. *Sampson*, 511 F.2d 430 (D.C. Cir. 1974). We did not discuss the subsequent district court decision in *Kennedy* v. *Jones*, 412 F. Supp. 353 (D.D.C. 1976). In *Kennedy* v. *Jones*, the government entered into a consent judgment with the plaintiff in a case challenging the validity of two pocket vetoes: one, an intersession pocket veto; the other an intrasession pocket veto during an election recess of 31 days. On the same day that judgment was entered, President Ford announced publicly that he would not invoke his pocket veto power during intrasession or intersession recesses if the originating House of Congress had specifically authorized an officer or other agent to receive return vetoes during such periods. Department of Justice Press Release, Apr. 13, 1976.[3] That an-

---

[1] The constitutionality of President Reagan's pocket veto of H R 4353 may be litigated in the Lifetime Communities, Inc., New York bankruptcy proceeding now pending in the Second Circuit, *Lifetime Communities, Inc.* v. *The Admin. Office of the U S Courts* (*In re* Fidelity Mortgage Investors), No. 82–5005 The Administrative Office of the U.S Courts, represented by the Department of Justice, filed a response on September 27, 1982, to appellants' motion for leave to supplement its petition for rehearing to include a challenge to the pocket veto. In that response, appellee agreed that appellants' newly raised challenge to President Reagan's pocket veto of H.R 4353 should be reheard on the merits by the Second Circuit panel. The pocket veto of H R 4353 was, of course, an *intersession* pocket veto However, the rationale supporting the availability of intersession pocket vetoes would seem equally applicable to pocket vetoes during extended *intrasession* recesses. The *Lifetime Communities* case may afford a more favorable factual setting than the two *Kennedy* cases, as well as a different forum, for litigating the pocket veto issues it presents [The pocket veto issue was not decided by the court of appeals, *see* 690 F 2d 35 (2d Cir 1982), and *certiorari* was denied by the Supreme Court 462 U S 1106 (1983) ]

[2] With respect to the discussion in that memorandum regarding the implications of the pocket veto cases for the President's recess appointment power, *see* our Feb 10, 1982, memorandum to you at pp [134]. We refer you to our October 25, 1982, memorandum to Counsel to the President Fred F Fielding for a discussion of recent developments in the recess appointments area

[3] Thus, the immediate occasion for the 1976 Ford announcement was the 1976 *Kennedy* v. *Jones* consent judgment. That announcement was not made, as erroneously suggested in our previous memorandum, in response only to the 1974 *Kennedy* v *Sampson* case.

nouncement addressed only President Ford's intended use of the pocket veto power, and did not purport to bind, nor could it have bound, future Presidents. President Reagan has made no similar statement, nor did President Carter during his Presidency.

President Ford's statement confines its application to those situations in which the House of origin has specifically authorized an agent to receive messages during the adjournment in question, as had been done in the case of the intrasession pocket veto challenged in *Kennedy* v. *Jones*. *See* S. Con. Res. 120, § 3, 120 Cong. Rec. 36038 (1974) (intrasession election adjournment of the 2d Session of the 93d Congress). Specific authorizations of an agent to receive messages from the President became customary for intrasession and intersession recesses in both the Senate and the House,[4] and apparently still are in the Senate.[5] At the beginning of the 97th Congress, however, the House amended its Rules to add new Rule of the House III–5, which authorizes the Clerk to receive messages "at any time that the House is not in session."[6] The House Parliamentarian's comments on new Rule III–5 state that this language is an effort to prevent *intra*session pocket vetoes, citing *Kennedy* v. *Sampson*. Those comments make no mention of *inter*session pocket vetoes or of *Kennedy* v. *Jones*. The legislative history of new Rule III–5 supports this interpretation. Congressman Michel entered an analysis of the January 1981 Rules changes into the Congressional Record prior to their adoption. 127 Cong. Rec. 100–03 (1981). His explanation of proposed new Rule III–5 states that it applies only to "non *sine die* adjournments." *Id.* at 100.

With respect to President Reagan's pocket veto of H.R. 4353 during the intersession recess of the 97th Congress, to which our February 10, 1982, memorandum was addressed, several observations should be made. First, it was an intersession veto, and thus fell outside the scope of the D.C. Circuit's decision in *Kennedy* v. *Sampson*. Second, there was no specific resolution adopted by the House authorizing its agent to receive presidential messages during the intersession recess of the 97th Congress, nor was there unanimous consent to do so, as we noted in that memorandum. Third, although the broad language of new House Rule III–5, quoted above, arguably covers intersession pocket vetoes, its commentary and legislative history indicate that it was aimed specifically at *intra*session pocket vetoes. Thus, we believe that the pocket veto of H.R. 4353 would probably have been considered appropriate even under President Ford's self-imposed limitations on the exercise of his pocket veto power.

More importantly, however, we do not believe that subsequent Presidents should consider themselves bound by President Ford's self-imposed restrictions on his use of the pocket veto power. Our February 10, 1982, memorandum and the Supreme Court cases which it analyzes set forth the rationale supporting the

---

[4] *See, e g.,* S Con. Res 120, § 3, 120 Cong Rec 36038 (1974), H.R. Con Res 518, § 3, 121 Cong. Rec. 41973 (1975), H R Con Res 442, § 2, 123 Cong. Rec 39132 (1977).

[5] 127 Cong. Rec. S15632 (daily ed. Dec 16, 1981); 128 Cong Rec S13262 (daily ed. Oct 1, 1982).

[6] *See* H R Res 5, 127 Cong Rec 98–113 (1981) The Senate Rules have not been similarly amended *See* Senate Manual 1981 (S Doc. No. 1, 97th Cong., 1st Sess. (1981)).

use of pocket vetoes during both intersession and extended intrasession recesses. While we strongly believe that the pocket veto power should be interpreted in accordance with the principles set forth in our February 10, 1982, memorandum, the cases discussed there, as well as the subsequent developments mentioned here, suggest caution in exercising that power during at least intrasession recesses until more favorable court decisions have been obtained. The consequence of an unfavorable court ruling on a pocket veto is that the legislation becomes law. If a return veto is utilized, of course, the veto must be overridden in order for the bill to become law. With respect to the present extended (October 2–November 29) intrasession adjournment, the broad statement of the holding by the court in *Kennedy* v. *Sampson* counsels against use of a pocket veto,[7] at least with regard to important legislation. The adjournment *sine die* of the 2d Session of the 97th Congress will presumably terminate that Congress, and bills presented within ten days of that final adjournment would be subject to pocket vetoes. As noted in our February 10 memorandum, the propriety of a pocket veto after a final adjournment (as opposed to an intrasession or intersession adjournment) remains unquestioned, "since such an adjournment terminates the legislative existence of the Congress and makes it impossible to return the bill to either House." *The Pocket Veto Case*, 279 U.S. 655, 681 (1929).

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[7] Even though the case itself involved an intrasession pocket veto during an adjournment of only six days' duration.